UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EVELYN R. O'BRIEN,

                              Plaintiff,

          -vs-                                        03-CV-0875C(F)

CARRIER COACH, INC.,

                              Defendant.
_____

In this action, plaintiff Evelyn O'Brien seeks money damages against defendant Carrier Coach, Inc., based on 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). Carrier Coach moves pursuant to Rule12(c) of the Federal Rules of Civil Procedure to dismiss plaintiff's Section 1983 claim. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

Plaintiff commenced this action on November 21, 2003, against Carrier Coach and Mr. Frank Sciabarrasi. She claims that on November 28, 2001, during the process of applying for a job with Carrier Coach, she was sexually assaulted by Mr. Sciabarrasi, who was the manager of Carrier Coach's Allegany, New York, office. She sought hospital treatment immediately after the incident, and reported the assault to police and crisis services agencies, which in turn reported the incident to Carrier Coach. She alleges that she was never contacted by Carrier Coach regarding either her complaint against Mr. Sciabarrasi or her employment status. She claims that as a result, and in retaliation for reporting the incident, she was terminated from "and/or was never permitted to

consummate her employment" with Carrier Coach (Item 12, ¶ 30), causing lost wages and benefits, emotional harm, and "violations of her fundamental constitutional rights . . ." (*id.* at ¶ 32).

In Count I of the complaint, plaintiff alleges that the actions of Mr. Sciabarrasi and Carrier Coach were carried out under the color of state law "and had the effect of depriving Plaintiff of rights secured by the Constitution and the laws of the United States," in violation of Section 1983 (*id.* at ¶¶ 33-42).  In Count III, plaintiff alleges that defendants' conduct constitutes employment discrimination based on sex, in violation of Title VII (*id.* at ¶¶ 51-60).[1]

Carrier Coach answered the complaint, and subsequently moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) seeking dismissal of plaintiff's Section 1983 claim (Item 13).[2]  Mr. Sciabarrasi separately moved, in lieu of an answer, to dismiss the complaint against him pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative to stay this action pending the resolution of a previously filed state court action based on the same facts and circumstances (*see* Item 9).  Upon settlement of both the state and federal court claims involving Mr. Sciabarrasi, plaintiff voluntarily withdrew her complaint against him, leaving Carrier Coach as the sole defendant in this case (*see* Item 30).

---

[1] Plaintiff also alleged, in Count II of the complaint, that the actions of Mr. Sciabarrisi and Carrier Coach were taken "collectively and in concert," in violation of 42 U.S.C. § 1985(3) (Item 1, ¶¶ 43-50). Plaintiff has voluntarily withdrawn this claim (*see* Item 26, ¶ 12), leaving Count I (Section 1983) and Count III (Title VII) as the remaining causes of action in the case.

[2] Carrier Coach has not moved to dismiss the Title VII claim.

Carrier Coach moves for judgment on the pleadings dismissing Count I of the complaint on the ground that plaintiff fails to allege facts sufficient to satisfy any of the recognized tests for determining whether a private party's conduct constitutes "state action" for purposes of Section 1983. For the following reasons, this motion is granted, and Count I is dismissed.

## DISCUSSION

I.    **Rule 12(c)**

Rule 12(c) provides simply that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for review of a motion made pursuant to Rule 12(c) is "indistinguishable" from the standard applied to a motion made pursuant to Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. *DeMuria v. Hawkes*, 328 F.3d 704, 706 n.1 (2d Cir. 2003). Under this standard, the court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Dismissal of a claim pursuant to Rule 12(c) is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).

At the pleading stage, the issue for the court "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claim[ ]. Indeed it may appear on the face of the pleading that a recovery is very remote

and unlikely but that is not the test." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (internal quotation marks omitted). Rather, the court's task in reviewing a Rule 12(c) motion "is merely to assess the legal feasibility of the [claim], not to assay the weight of the evidence which might be offered in support thereof." *Sims*, 230 F.3d at 20 (citing *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).

## II.    "State Action" Under Section 1983

Section 1983 imposes liability for damages and/or equitable relief based on the deprivation of constitutional rights by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia . . . ." 42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that this conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993); *Cassidy v. Nicolo*, 2005 WL 3334523, at *4 (W.D.N.Y. December 7, 2005).

"[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). In order to satisfy this element where, as in this case, the defendant is a private entity, the allegedly unconstitutional conduct must be "fairly attributable to the State." *American Mfrs.*, 526 U.S. at 50; *see also Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir.),

-4-

*cert. denied*, 539 U.S. 942 (2003).  Private conduct may be fairly attributed to the state only if there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted).

> This "close nexus" has been found to exist

> where the state exercises "coercive power" over, is "entwined in [the] management or control" of, or provides "significant encouragement, either overt or covert" to, a private actor, or where the private actor "operates as a willful participant in joint activity with the State or its agents," is "controlled by an agency of the State," has been delegated a "public function" by the state, or is "entwined with governmental policies."

*Tancredi*, 316 F.3d at 313 (quoting *Brentwood Academy*, 531 U.S. at 296).   For convenience of application, the courts have consolidated these requirements into the following three tests:  (1) the "state compulsion" test, (2) the "close nexus/joint action" test, and (3) the "public function" test.  *See Okunieff v. Rosenberg*, 996 F. Supp. 343, 347-57 (S.D.N.Y.1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999), *cert. denied*, 528 U.S. 1144 (2000).

Under the state compulsion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."  *Blum*, 457 U.S. at 1004 (citation omitted).  The close nexus/joint action test requires a plaintiff to demonstrate "a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself."  *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974), *quoted in Blum*, 457 U.S. at 1004.  Finally, the public function test is satisfied if the private

party performs a function that is "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *Blum*, 457 U.S. at 1005.[3]

In this case, plaintiff alleges that Carrier Coach, "a domestic business corporation, in the business of providing bus services for local schools, special education programs, and adult workshops" (Item 1, ¶ 5), qualifies as a "state actor" for Section 1983 purposes because its business activities: (1) depend upon "a certain amount" of governmental aid; (2) are regulated by various state or federal statutes and regulations; (3) are subject to licensing by state or federal agencies; (4) involve interstate commerce; (5) serve a public function as an integral part of state or federally supported educational programs; and (6) are conducted according to policies which "are greatly influenced and/or shaped by state and/or federal statutes and regulations" (Item 1, ¶ 10). As the following discussion shows, these allegations–accepted as true–fail to satisfy any of the recognized tests for determining whether the challenged conduct of Carrier Coach can be fairly attributed to the state for the purpose of imposing liability under Section 1983.

A.      **The State Compulsion Test**

As discussed, under the "state compulsion" test a private party may be found to have acted under color of state law for Section 1983 liability purposes where the state "has exercised coercive power or has provided such significant encouragement" that the party's

---

[3]The Supreme Court acknowledged in *Jackson* that the determination as to whether private conduct constitutes state action "frequently admits of no easy answer." *Jackson*, 419 U.S. at 350. The Second Circuit has characterized the task as "'one of the more slippery and troublesome areas of civil rights litigation.'" *International Soc'y for Krishna Consciousness, Inc. v. Air Canada*, 727 F.2d 253, 255 (2d Cir. 1984) (quoting *Graseck v. Mauceri*, 582 F.2d 203, 204 (2d Cir. 1978), *cert. denied*, 439 U.S. 1129 (1979)). Nonetheless, as the discussion in the text amply demonstrates, under the facts set forth in the pleadings plaintiff cannot satisfy any of the standards routinely applied by the courts in making this determination.

actions are attributable to the state.  *Blum*, 457 U.S. at 1004.  Courts in the Second Circuit have held that in order to satisfy this test, plaintiff must allege "actual coercion" by a state actor that impacts upon the private actor's decision-making.  *See Turturro v. Continental Airlines*, 334 F. Supp. 2d 383, 395 (S.D.N.Y. 2004); *Doe v. Harrison*, 254 F. Supp. 2d 338, 342 (S.D.N.Y. 2003).

In this regard, plaintiff contends that the state and federal governments exercise coercive power over the management and control of Carrier Coach's business activities by way of numerous statutes and regulations setting standards for the hiring and licensing of school bus drivers and other matters directly related to the provision of transportation for public school students and developmentally disabled adults (*see* Item 26, ¶ 18). Plaintiff also alleges that Carrier Coach receives, and is dependent upon, an unspecified amount of government aid.

Taking these contentions to be true,[4] the "coercive power" of state and federal government regulation, even if "extensive and detailed," does not make a private party's actions state action.  *Jackson*, 419 U.S. at 350.  Rather, the "coercion" inquiry focuses on whether the challenged conduct itself was "compelled or  . . .  influenced" by state regulation.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).

The Supreme Court's decision in *Rendell-Baker* is illustrative.  In that case, five employees of a private school brought a Section 1983 action against a private school and its director, alleging that they had been discharged for speech protected by the First Amendment.  The crucial issue presented was whether the director and the school were

---

[4]Carrier Coach denies that it receives any state or federal funding (*see* Item 15, p.7, note 2).

acting under color of state law when the plaintiffs were discharged. The school received virtually all of its operating budget from public funding, subject to its compliance with extensive state and municipal regulation. Nonetheless, the Supreme Court held that these circumstances did not make the school's personnel decisions "state actions" for the purposes of Section 1983 because the government regulation did not compel or influence those decisions. "Indeed, in contrast to the extensive regulation of the school generally, the various regulators showed relatively little interest in the school's personnel matters." *Rendell-Baker*, 457 U.S. at 841.

Similarly, and somewhat closer to the mark, in *Black v. Indiana Area School Dist.*, 985 F.2d 707 (3d Cir. 1993), several schoolchildren and their parents brought a Section 1983 action against a school bus driver and the bus company alleging that the children were sexually molested by the driver while being driven in the bus to and from school. Relying on *Rendell-Baker*, the Third Circuit held that, while the bus company was carrying out a "heavily regulated" state program at state expense, it was not performing a function that has been "'traditionally the exclusive prerogative of the state,' and there was no state regulation that 'compelled or even influenced' the conduct which is alleged to have violated plaintiffs' constitutional rights." *Black*, 985 F.2d at 711 (quoting *Jackson*, 419 U.S. at 353; *Rendell-Baker*, 457 U.S. at 841).

In this case, plaintiff has not alleged that Carrier Coach's employment decisions generally–or the decision not to employ plaintiff specifically–were compelled or influenced by any state or federal statute or regulation or were otherwise actually coerced by a state actor. Clearly, in making the decision not to contact plaintiff about her job application after the incident involving Mr. Sciabarrasi, Carrier Coach was carrying out a discretionary

employment function not traditionally reserved to the exclusive prerogative of the state.

Accordingly, plaintiff cannot satisfy the state compulsion test.

### B.    The Close Nexus/Joint Action Test

This finding applies as well to the "close nexus/joint action" test.  As discussed, to satisfy this test plaintiff must allege a sufficiently close nexus between the state and the private actor's challenged conduct so that the private action may be fairly treated as state action.  *Jackson*, 419 U.S. at 351; *Doe*, 254 F. Supp. 2d at 343.  The test can also be met if it involves a situation in which the state has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357-58; *Okunieff*, 996 F. Supp. at 352. The purpose of the close nexus requirement is to "assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."  *Blum*, 457 U.S. at 1004.

Plaintiff's allegations regarding government regulation and provision of aid fall far short of the pleading requirements for meeting the close nexus/joint action test.  This is perhaps best illustrated by the Supreme Court's holding in *Blum*.  There, as here, the plaintiff argued that state licensing requirements and subsidization of the private defendant's operating and capital costs converted the defendant's actions into state action. The Supreme Court stated:

> [A]ccepting all of these assertions as true, we are nonetheless unable to agree that the State is responsible for the decisions challenged by respondents.  As we have previously held, privately owned enterprises providing services that the State would not necessarily provide, even though they are extensively regulated, do not fall within the ambit of [Section 1983].

> That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business.

*Blum*, 457 U.S. at 1011.

As with the "state compulsion" test, mere reference to government funding and invocation of government regulations is not enough to establish a sufficiently close nexus or joint action with the state so that Carrier Coach's decision not to employ plaintiff can be fairly considered state action.  Instead,  plaintiff must plead–and ultimately prove–that the state is in some way responsible for the decision.  This she cannot do.

Accordingly, plaintiff has failed to satisfy the close nexus/joint action test.

## C.    Public Function Test

Finally, plaintiff's attempt to assert a Section 1983 claim against Carrier Coach fails under the "public function" test as well.  As mentioned, under this test a court may find state action where a private party performs a function that is "traditionally the exclusive prerogative of the State . . . ."  *Jackson*, 419 U.S. at 353.

> [I]t is not enough to show that the private actor performed a public function. The plaintiff must show that the private entity assumed powers "traditionally exclusively reserved to the State."  The fact that the private party has powers coextensive with the state is irrelevant to determine that state action exists. Exclusivity is required.

*Okunieff*, 996 F. Supp. at 353 (quoting *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994)) (other citations omitted).   "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'"  *Flagg*

*Bros. Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (quoting *Jackson*, 419 U.S. at 352); *see also Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1456 (10th Cir. 1995).[5]

As stated by the Second Circuit:

> The public function doctrine focuses less on the degree of government involvement and more on the nature of the function performed by an entity which might otherwise be considered private.  If the function is one which is traditionally within the exclusive province of government, the entity performing that function may be considered to be an instrumentality of the government.

*Janusaitis v. Middlebury Volunteer Fire Dept.*, 607 F.2d 17, 23 (2d Cir. 1979) (finding fire protection to be a public function amounting to state action).

Plaintiff contends that providing bus transportation services to public school and special education students and developmentally disabled adults in state-sponsored programs is a public function that has been reserved exclusively to the state.  In support of her argument, plaintiff refers to sections of the New York Education Law and implementing regulations which authorize school districts in the state to contract for transportation services and establish standards for driver qualification, licensing, and safety.  However, as discussed above, even where state regulation of the private actor's business activity is "extensive and detailed," and the activity is publicly funded, the courts have been extremely reluctant to find the activity to be exclusively a function of the state. *See Jackson*, 419 U.S. at 350; *see also Rendell-Baker*, 457 U.S. at 840-42.

---

[5]As noted in *Gallagher*, the Supreme Court has found very few public functions to be exclusively reserved to the state: administering elections of public officials, *Terry v. Adams*, 345 U.S. 461(1953); operating a company-owned town, *Marsh v. Alabama*, 326 U.S. 501 (1946); and managing a city park, *Evans v. Newton*, 382 U.S. 296 (1966).  The Court has, however, declined to find an exclusive state function in a wide variety of circumstances. *See, e.g., Blum*, 457 U.S. at 1011-12 (nursing home care); *Rendell-Baker*, 457 U.S. at 842 (education of children); *Flagg Bros.*, 436 U.S. at 161-64 (enforcement of statutory lien by a private warehouse).

Indeed, none of the cases relied on by plaintiff has found the provision of school bus services by a private bus company to be a function traditionally reserved to the state.   On the other hand, defendant cites the *Black* case, referenced above, which expressly held that a private bus company's operation of school transportation services, while heavily regulated and funded by the state, was not a function within the exclusive province of the state.   *Black*, 985 F.2d at 709-11.   Plaintiff has not provided any basis for distinguishing the circumstances in *Black* from those presented here, and this court finds no compelling reason why the Tenth Circuit's holding, and its persuasive reasoning, should not be adopted.

Plaintiff's reliance on *Perez v. Sugarman*, 499 F.2d 761 (2d Cir. 1974), does not dictate a different result.   In *Perez*, after the plaintiff suddenly became ill and was hospitalized, her two children came into the custody of New York City child welfare officials and were subsequently placed with two private child-caring institutions.   Following her release from the hospital, plaintiff sought the return of her children, but the institutions refused to surrender custody.   Plaintiff brought suit under Section 1983 against the private institutions and four individuals employed by the city, alleging deprivations of her constitutional rights to due process and equal protection of the laws.   The Second Circuit found the requisite "state action" on the part of the private institutions because they were clearly performing the public function of caring for neglected or abandoned children under the express statutory scheme set forth in the New York Social Services Law.   *Perez*, 499 F.2d at 765.

The circuit court took care to note that its conclusion did not rely solely on the "public function" theory, but was bolstered by the comprehensive state law regulatory scheme which provided "persuasive, perhaps compelling, evidence of the degree to which the State has insinuated itself into the actions of the private [institutions] . . . ." *Id.* The court further explained that the state's comprehensive regulatory system did not compel a holding that every action in which a private child care institution engages would be found to be "state action" under Section 1983.

> Rather, . . . the particular custodial power exercised here in detaining [plaintiff]'s children constitutes "state action" because there is a nexus between the public function being performed and the specific acts which are alleged to be objectionable. Just as in *United States v. Wiseman*, [445 F.2d 792 (2d Cir.), *cert. denied*, 404 U.S. 967 (1971)], "this case directly involves defendants' mode of conducting the public function and does not involve a collateral aspect of" the business of operating an institution which cares for children. The existence of this nexus has made the courts more receptive to a finding of "state action."

*Perez*, 499 F.2d at 766 (citing *Wiseman*, 445 F.2d 796).

As discussed above, in this case plaintiff has not pleaded the requisite "close nexus" between the public function of providing state regulated school bus services and the specific acts on the part of Carrier Coach alleged to be objectionable–*i.e.*, its decision not to contact plaintiff about her job application after the incident involving Mr. Sciabarrasi. Absent this nexus, the holding in *Perez* carries less weight in the "public function" analysis.

In sum, upon assessment of the legal feasibility of Count I of the complaint in this action, the court finds that plaintiff can assert no set of facts to support a finding that Carrier Coach was acting under color of state law for the purposes of imposing liability

under Section 1983.  Accordingly, Count I is dismissed with prejudice for failure to state a claim upon which relief can be granted.[6]

## CONCLUSION

For the foregoing reasons, defendant's motion (Item 13) for judgment on the pleadings is granted.  Count I of the complaint is dismissed, leaving only plaintiff's claim for employment discrimination in violation of Title VII (Count III).

A telephone conference will be conducted with the court on March 28, 2006, at10:30 a.m. to discuss a schedule for further proceedings in this case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   March   6   , 2006
p:\opinions\03-875.feb2806

---

[6]Plaintiff requests in her motion papers that should the court find Count I deficient, she should be granted leave to amend in order to preserve her cause of action under Section 1983.  This request is denied, since plaintiff has not alluded to the existence of any facts or cited any law that would cure the defects in Count I.  *See Bliss v. Rochester City School District*, 196 F. Supp.2d 314, 342 (W.D.N.Y. 2002) (court may deny leave to amend where no possible amendment could cure defects, and plaintiff offered no proposed amendment or detailed explanation of how valid claim for relief could be stated), *aff'd*, 103 Fed. Appx. 421, 2004 WL 1258349 (2d Cir. 2004).